(C. D. 1589)

TROPICAL CRAFT CORPORATION, SUCCESSORS TO TROPICAL CRAFT IMPORT & EXPORT CO. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 24, 1954)

*Jordan & Klingaman* (*Edward F. Jordan* and *Jacob L. Klingaman* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise in the case at bar consists of certain women's footwear described on the invoices herein as "Alpargatas Footwear" or "Sisal Alpargatas Footwear." It was classified under paragraph 1530 (e) of the Tariff Act of 1930 with a duty assessment of 35 per centum ad valorem as footwear, the uppers of which are composed wholly or in chief value of wool, cotton, or other material, regardless of whether the soles are composed of leather, wood, or other material. Plaintiff claims the merchandise properly dutiable at only 17½ per centum ad valorem under the said paragraph, as modified by the trade agreement with Argentina, T. D. 50504, under the *eo nomine* provision therein for "alpargatas."

The pertinent provisions of the tariff act, as originally enacted and as modified by the trade agreement, are as follows:

Paragraph 1530 (e), Tariff Act of 1930:

* * * boots, shoes, or other footwear * * *, the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials, 35 per centum ad valorem.

Paragraph 1530 (e), Tariff Act of 1930, as modified by the trade agreement with Argentina, T. D. 50504:

Footwear known as alpargatas, the uppers of which are composed wholly or in chief value of cotton or other vegetable fiber, and with soles composed wholly or in chief value of vegetable fiber other than cotton, 17½% ad valorem.

Certain items of footwear, offered as representative of the imported merchandise, were received in evidence, without objection, as plaintiff's collective exhibits 1, 2, and 3, and plaintiff's exhibit 4. An examination of each of these exhibits shows them to be ladies' footwear. The bottom part of each item, or what was referred to by counsel for both sides as the sole, is flat from toe to heel, except for a small piece of leather, one-eighth of an inch thick, attached at the heel. A wooden wedge extending from about the midpoint to the heel is attached to the upper part of the sole in such manner as to elevate the heel of the wearer above the floor about 2 inches more than the height at the ball of the foot. There is a cloth or fabric insole extending from toe to heel.

The bottom part of the articles is composed of twisted, braided, or plaited fiber, so shaped and coiled and fastened as to form a sole. The uppers are composed of braided fiber secured at the forepart of the article between the inner and outer soles and forming an "open toe" instep covering. The articles are held to the foot by means of a

braided fiber strap secured under the insole at the forepart of the heel and carried around to form a "sling back." The wooden wedge and the outer part of the sole are covered with braided fiber, and the uppers and straps are lined with what appears to be cotton fabric.

Counsel for the respective parties have stipulated that the merchandise represented by the samples in question is footwear, the uppers of which are composed in chief value of sisal, a vegetable fiber; that the soles, exclusive of the wooden wedges, are also composed in chief value of sisal; and that the articles, as entireties, are composed in chief value of sisal.

It is apparent from the brief filed on behalf of the defendant herein that in the classification of "alpargatas" under the language of the Argentine Trade Agreement, *supra*, it was guided by what it considered to be a definition of the term contained in a publication of the United States Tariff Commission entitled—

Trade Agreement
Between the United States
and
Argentina
Digests of Trade Data with Respect to Products
On which Concessions Were Granted
By the United States
Washington
1942

wherein alpargatas are described as follows:

This type of footwear is a sandal with rope soles and uppers of cotton fabric.

The brief of defendant in essence contends that the articles here under consideration are not alpargatas for any or all of the following alleged reasons: (1) They do not have rope soles; (2) the uppers are not made of cotton fabric; and (3) they are not sandals.

It is the contention of the plaintiff that the involved merchandise is "alpargatas" within the common or ordinary meaning of the term as understood in the United States. In support of this contention, plaintiff cites the following definition of the term from the 1931, 1939, 1942, and 1945 editions of Funk & Wagnalls New Standard Dictionary:

Alpargata, n. (Sp.)—A sandal-like shoe having a sole of plaited hemp or rush, worn by the Chinese, and by Spanish peasants and Filipinos.

Also, the following from the 1934, 1936, 1941, 1948, and 1951 editions of Webster's New International Dictionary:

Alpargata, n. (Sp.)—A kind of sandal usually made of hemp.

The term "alpargatas" first became a tariff enumeration as an *eo nomine* designation by the proclamation, dated October 31, 1941, of the President of the United States of a trade agreement concluded with

the Argentine Republic, reported in 77 Treas. Dec. 138, T. D. 50504. It is the common meaning of that term as of that time which is here in question. No issue of commercial designation is presented, neither party contending that the term "alpargatas" at that time had a commercial meaning differing from its common or ordinary meaning.

In the light of the foregoing, the definitions, hereinbefore quoted from Funk & Wagnalls New Standard Dictionary and Webster's New International Dictionary, showing an unchanged meaning from a time considerably prior to the introduction of the term "alpargatas" as a tariff enumeration in 1941, up to very recent times, are, we think, particulary significant and applicable.

Moreover, we are aided in our consideration of the meaning to be ascribed to the term by the descriptive language associated with the term in the trade agreement provision proclaimed by the President. The provision is not merely for "alpargatas," but is for:

Footwear known as alpargatas, the uppers of which are composed wholly or in chief value of cotton or other vegetable fiber, and with soles composed wholly or in chief value of vegetable fiber other than cotton.

Inasmuch as the term appears in a trade agreement, there must have been some meeting of the minds of the negotiators as to the nature of the article intended to be covered thereby. They specified footwear "known as" alpargatas, that is to say, footwear known both in this country and in the Argentine as "alpargatas." From the language which then follows, it is apparent that the negotiators understood that the uppers of footwear known as alpargatas could be composed of cotton *or of other vegetable fiber*. From this, it is clear that the term as contemplated in the trade agreement was not limited to footwear, with uppers of cotton, but included, as well, footwear, with uppers composed of other vegetable fiber.

As hereinbefore pointed out, the Government adopted a Tariff Commission description as a definition of the term "alpargatas" for classification purposes, which definition referred to the uppers of "alpargatas" as being of cotton fabric. It is, we think, established from what has been said above that the said definition so limiting the material of the uppers was not properly applicable to the provision embodied in the trade agreement and proclaimed by the President, *which provision by its own language was not so limited.*

It is apparently contended by the defendant that the articles here in issue do not have rope soles. "Rope" is defined in Webster's New International Dictionary, second edition, 1945, as follows:

A large, stout cord made of strands of fiber or wire twisted or braided together; esp., such a cord of one inch or more in circumference, or, according to authorities on testing materials, of ¼ to 5 inches in diameter. The fibers chiefly used in rope-making are hemp, Manila hemp, *sisal*, jute, coir, flax, and cotton. [Italics added.]

Counsel have stipulated that the soles of the articles here involved are composed in chief value of sisal, and it requires but the merest visual examination to determine that the sisal is in the form of a twisted or braided fiber approximately one-fourth inch or more in diameter. It seems clear, therefore, that the imported articles do have rope soles.

Finally, it is urged by the defendant that the articles at bar are not sandals and, consequently, cannot be alpargatas. In Webster's New International Dictionary, second edition, 1945, "sandal" is defined as:

1. A kind of shoe consisting of a sole strapped to the foot; a protection for the foot, covering its lower surface only.

2. A fancy slipper, sometimes containing openwork in the vamps and quarters.

and in Funk & Wagnalls New Standard Dictionary, 1942, as:

A kind of shoe, consisting usually of a sole only, but sometimes with a shield for the heel and a cap for the toes, held to the foot by thongs, cords, etc.

It may very well be that a basic sandal consists of a sole only, strapped to the foot by thongs or cords. However, it is clear that the term is a very broad one, as is indicated by Webster's second definition and the Funk & Wagnalls definition above cited. Moreover, it would appear that the term "alpargatas" is not limited to the basic rope-soled sandal, for the Funk & Wagnalls definition of "alpargata" calls it "a sandal-*like* shoe," indicating that while it may embody some of the characteristics of a sandal, it may differ in other respects.

Indeed, this is tacitly admitted by the defendant. Plaintiff offered and there were received in evidence without objection as plaintiff's collective illustrative exhibit 6, six items of footwear having rope soles and full cotton uppers, with closed backs, and with tongues and laces, permitting them to be laced onto the foot. The remaining shoe in this collective illustrative exhibit has an open back and open toe, with a strap containing a buckle attached thereto by which the shoe can be strapped on the foot. All of the seven articles represented by collective illustrative exhibit 6 were conceded by the defendant to be known as alpargatas in the United States. The six articles first described above are a departure from what might be termed a basic sandal, in that they have modern full uppers with tongues and laces, and the seventh is virtually the same article as the imported articles, without the wedge construction.

The thought which the term "sandal" connotes is of a flat-bottomed article of footwear, exhibiting little or no arch on the underside, having an upper in a more or less modified sense of the term, and held to the foot by straps or the like. The articles at bar, represented by plaintiff's collective exhibits 1, 2, and 3, and plaintiff's exhibit 4,

have these characteristics. The use of the wooden wedge to elevate the heel of the wearer is quite obviously an improvement bringing the basic alpargata more in line with typical current or modern shoe design. In this aspect, it is somewhat similar to the use of such modern shoe features as full cotton uppers, with closed backs and tongues and laces, in the six articles above referred to in plaintiff's collective illustrative exhibit 6. We do not think that the addition of the wedge to the basic alpargata in the case of the articles here involved destroyed the characteristics of alpargatas which the articles otherwise possess.

We are not impressed by the agrument made by counsel for the defendant to the effect that this case is on "all fours" with the case of *United States* v. *Weigert-Dagen et al.*, 39 C. C. P. A. (Customs) 58, C. A. D. 464. In that case, the court found that the term "huaraches," as used in a trade agreement with Mexico, was of doubtful or ambiguous meaning, and, *as the commercial or common meaning was not otherwise satisfactorily established,* it was deemed proper to consider and give effect to the information contained in the Digests of Trade Data with respect to the said agreement *if that information was sufficient to establish the meaning of the doubtful and ambiguous word.*

Here, we find that the information contained in the Digest of Trade Data with respect to the word "alpargatas" is contradicted by the associated language of the trade agreement provision itself, and we also find other acceptable and authoritative sources to which we can turn to aid us in our determination of the meaning of the term.

As we read the decision of our appellate court, it did not hold that in the determination of the meaning to be attached to words used in trade agreements the Digests of Trade Data are the only, or the supreme, authority to which the courts may refer. It seems clear that the court considered such digests to be one of the sources to which reference might be had and that in the particular case it found that that source represented "the only convincing evidence in the record as to the intent of the contracting parties as to the meaning of the term 'huaraches.'"

Such is not the case here, inasmuch as the common meaning of the trade agreement term can be otherwise satisfactorily established, and, moreover, the language of the trade agreement itself is contradictory of the information contained in the Digest of Trade Data.

We are satisfied that the merchandise at bar falls within the common meaning of the term "alpargatas," as used in the trade agreement provision proclaimed by the President and which modified paragraph 1530 (e) of the Tariff Act of 1930, and that the merchandise should take classification thereunder. That claim in the protests is, therefore, sustained, and judgment will issue accordingly.